Good morning, counsel. Good morning. Please proceed when you're ready. Thank you, Judge Rawlinson. I may please the Court. My name is Neal Katyal, and on behalf of all appellants, I'd like to reserve four minutes for rebuttal. All right. In 2000, the Supreme Court in Stevens held that a federal law governing, quote, any person was presumed to not include the sovereign. A few years later, Congress enacted Dodd-Frank, which uses that exact Stevens formulation of any person. Dodd-Frank created a new Federal Consumer Finance Protection Bureau. That bureau turned around and issued CIDs to the three tribal entities before you today. Those CIDs are improper, our argument is, because they are not persons under the – the tribal entities are not persons under the statute. Of course, Congress could have swept tribal entities into Dodd-Frank. It could have used a different word or it could have used the same words, any persons, but defined it. Isn't one of the definitions of person in the Act an entity? An entity, absolutely. And the tribe, these corporations are not entities? Well, I think the Supreme Court dealt with exactly that, Judge Bea, in the Will case. So in Will, the statute was in 1983, Section 1983, which said person, and the plaintiff in Will had sued a State official. And the argument to the Supreme Court was, hey, you know, a State official is obviously a person. And the Supreme Court said, and this is at page 71, quote, obviously State officials literally are persons, but a suit against a State official in his official capacity is not different from a suit against the State itself. And we think the exact same logic applies here. Congress knew exactly what words not to use, which are the words any person, when they wrote the statute, but they did. And if there's any page in our briefs that I think you should look at, it's page 15 of our opening brief, because that gives you, Judge Bea, statute after statute in which Congress has used words like entity or corporation or company, and still go on to say person doesn't just mean that. It also means Indian tribe. Here Congress didn't take that path. They had the opportunity to do so, and we certainly don't doubt that they have the raw power to do so. They just didn't do it here. Sotomayor. Counsel, what do you do with our precedent that says that laws of general applicability apply to tribal entities, unless Congress has explicitly provided otherwise? We completely agree that the role of this Court is to reconcile that precedent, which is Coeur d'Alene and Donovan and Stevens, the Supreme Court words about any person. And we offer two ways by which you do that, and I don't think the Bureau offers anything to the contrary. The first thing is, is that precedent only kicks in when a statute is silent about its applicability to tribes. This statute, Dodd-Frank, is in a class of one. It's the only statute this Court has ever confronted in which Congress went out of its way to actually mention tribes and define them on par with states as equals, and buying into the Stevens presumption. So I'm presuming that your argument means that the language of the statute, which describes tribes as equivalents of state, is the explicit provision that takes it outside the Donovan context. We do think that's one way, and that alone is sufficient to do so. And, indeed, I think the Bureau is not even disagreeing, and this, Judge Beyer, answers your first question as well. They took our hypothetical in our opening brief, which was if you buy their view about company, it means they get to regulate state, all the thousands of consumer-facing activity that state companies engage in. They said, yes, that's right. We get to do that. The problem with your interpretation is that part of the Dodd-Frank Act, which equates tribe with state, right, is with the state as a regulator. The tribe entities here are not regulators. They're commercial lenders. That's quite different from the state as a regulator. We think it's exactly, Judge Beyer, just like states, which are both regulators when they regulate their state lending, but they're also lenders. So they're lending billions of dollars to student loans and housing loans and the like. And what you're saying is that this CFPB cannot regulate a state acting as a lender. Absolutely. Do you have a case that says that? Well, I think that's the text of the statute with Stevens. That is, it would be an astonishing proposition. And the Supreme Court's decision in Chisholm is very clear for that. So your answer is you don't have a case, but we should read the statute that way. Well, Judge Beyer, the statute's only been around for a few years, and I don't think the Bureau has ever actually asserted this power to regulate state lending entities, so a case couldn't come up. So the answer is read the statute, don't read any case. Correct. Our argument is a pure statutory interpretation case. And, Judge Beyer, absolutely tribes themselves are engaged in regulation. The record here at ER 43, 113, 132, is all about the tribal lending codes that actually do regulate these lending activities pervasively. And so the question is, did Congress and Dodd-Frank, when it used those words as a matter of statutory interpretation, mean to go further and say, no, the tribal regulation alone isn't enough, this new Bureau gets to do so as well. And the argument, if you buy it here for tribes, boy, they're making a massive grab of authority to also say that's going to go for states as well, because as I was saying to Judge Rawlinson, there's this equivalence provision. Now, the other thing about Coeur d'Alene, to return to that question, Judge Rawlinson, is that Coeur d'Alene has a third exception. And the third exception in Coeur d'Alene is whenever a statute, whenever there's legislative history or something that indicates that the statute wasn't meant to be applied to tribes. And this is, again, the only statute the court has confronted. It's unlike Coeur d'Alene, in which Congress went out of its way to say, yes, it governs certain sovereigns, but it doesn't govern the states and local governments. And so there was a negative inference that could be drawn on the facts of that case, and indeed the court drew it. Here, you've got none of that. You've got one mention of tribes. That mention of tribes is to say that they're equivalent to states. You have a definition of persons. As Judge Bea, you're absolutely right to say it's a long definition. It's got entities. It's got companies in it. But if you read that to include the sovereign, then you'd have to ask, what the heck is Congress doing when they write all of these statutes at page 15 of our brief, in which they define person to include company and association and other things, but also say it includes Indian tribes? Congress had a path. They knew how to take that path. When they wanted to encompass Indian tribes, they didn't take that path. That's our argument. It's just pure statutory interpretation. And, you know, it doesn't seem unreasonable to me that when Congress is setting up a new agency, like the Consumer Finance Protection Board with unprecedented powers and an unprecedented structure that has never been before seen in the 200-plus years of our republic, that they were cautious about what new entities and what new swaths of authority they'd get. May I ask you a question based on your last statement? Is it any part of your case that this entity is unconstitutionally constituted? That is not what we're arguing here. I just want to rule that out so I don't have to think about it. Right. Well, in one way you do have to think about it a little bit, because you have to just ask yourself when Congress in 2010 uses the words any person, did they really, and to include company and corporation, did they really mean to extend that to the thousands of state consumer activities and all the things that tribes do? Wouldn't they have wanted some explicit mention of that? Counsel, what do you do with the language in the NLRB case that says that judicial intervention prior to an agency's initial determination of its jurisdiction is appropriate only where the agency's jurisdiction is plainly lacking? What do you do with that language? Is your argument that jurisdiction is plainly lacking on this case? We do think jurisdiction is plainly lacking, but we don't think that's a test. Judge Rawlinson, at pages 997 to 98 of that decision, I think you're reading from Chappaday, it says the parties agree, both as that case came to the court, both parties agreed that that was the standard of review. So the court didn't actually examine the question. It was conceded by the Chappaday people. We're not conceding that here. Oh, you're saying that the only reason that language is there is because the parties conceded it? That's what the Ninth Circuit decision says at page 997 to 98. And we think that this Court's decision in Carrick is very clear on this point, that when the question of whether Congress has given an agency the authority to investigate, if that's the question, Carrick says that this is a 260F3rd at 1078. That's a pure question of law and a particularly sensitive one when sovereign tribes are the target of that. And that makes sense because, you know, it would be, I think, a terrible result to say that the agency could kind of fish first and then ask questions later. And these CIDs are extremely intrusive, as, you know, the record shows here. It is, you know, it is every document, it's every contract, it's all sorts of stuff. And absolutely, I think Carrick is clear that they've got to prove up that they have jurisdiction to regulate over these new entities. And it would be, of course, the first time. All we're doing is asking to preserve the status quo, to do what exactly has happened for the hundreds of years that the American government's been around. And look, if somehow they're right and there's an abuse by some tribal entity, if Judge Bea, they don't act as the co-regulators that you were, you know, if they fall down on the job, absolutely, Congress can pick that up and change and rewrite Dodd-Frank to give it jurisdiction over these areas. But they didn't do that. And it's so telling that Congress has used exactly the formulation when they want to regulate tribes by defining tribes as persons. Counsel, may I ask you if the standard is not, so we're at the enforcement stage, would you agree? Correct. So if the standard is not whether the agency plainly lacks jurisdiction, what is the standard? I think the standard is just simply does the agency have jurisdiction or not. The Supreme Court in Louisiana Public Commission v. FCC says, quote, an agency literally has no power to act unless and until Congress confers powers upon it. And we live in a limited government, and here Congress has not conferred powers on the agency to act in this way. Dodd-Frank was an enormously controversial piece of legislation, debated every which way, not a word about them regulating tribes, not a word about them regulating states. The Supreme Court in Chisholm said, you know, if you're talking about giving an agency power to do new things, there would be some mention of it somewhere in those debates. There is zero. And we review that de novo. That's what Carrick says explicitly, to review it de novo. There are over a million words, I looked it up in the English language. Congress picked the very two words the Supreme Court told them not to pick if they were worried about governing the sovereign, about governing any person. Did you want to save time for a follow-up? Absolutely. All right. Thank you. We'll hear from the government. Good morning, and may it please the Court. Good morning. Kristen Bateman with the Consumer Financial Protection Bureau. Could you please speak up a little bit? Yes, Your Honor. Nothing in the CFPA gives tribally-affiliated lenders special permission to operate in the consumer financial marketplace without complying with the same laws as apply to everyone else. And as most relevant here, these lenders are persons under the Act, and they must comply with CIDs from the Bureau. And this is true both under a straightforward application of this Court's Coeur d'Alene precedent, and it's also true under the Stevens line of cases. It's never been thought that you need an express mention of tribes or that you need an express mention of states to subject the tribe  not in its special sovereign capacity, but instead is engaging in commercial activity just like private actors do. And you see this time and again, not just in this Court's Coeur d'Alene line of cases, which, of course, have applied generally-applicable federal laws to things like tribal sawmills, to casinos, to restaurants, to enterprises like that. What about state activities? So the council analogized the tribes to states and said that the statute treats them co-equally and that there is no practice of regulating states in this manner. So could you give us an example of where the government has regulated a state in other than its governmental capacity? Sure, and you see this time and again in the Stevens line of cases from the Supreme Court. The Supreme Court has held, for example, that states, when they act and they engage in commercial activity, they're subject to laws regulating wharves and piers. They're subject to railroad safety laws. They're subject to taxes on alcohol sales. They are subject to the antitrust laws. And the reason for this is intuitive. As the Supreme Court explained in United States v. California, laws like this are designed to prevent a particular type of harm, and that harm can equally well result regardless of whether the person acting in commerce is a state or a private entity. Point us to the strongest specific case you have on the federal government regulating a state engaged in commercial activity. What's the strongest case you have? I'll point, Your Honor, to two. United States v. California, which we cite in our brief, and also Jefferson County Pharmaceutical, which we also cite in our brief. Well, is Jefferson County a state? There were two defendants there. One was a county, but it was also the state. Jefferson County versus? Pharmaceutical v. Abbott Laboratories. And in both of those cases, the Supreme Court offered the reasoning that I was just explaining. And United States v. California said. I'm having a lot of trouble hearing you. Could you get that microphone closer to your voice? Yes. Is that better, Your Honor? I hope so. In United States v. California, the Supreme Court explained, this statute is designed to prevent a particular type of harm. States are equally capable of causing that harm when they're operating a railroad. And so there's no reason to think that Congress would have intended to exclude the state. United States versus California. California was running a railroad. That's right, Your Honor. And, therefore, the 45 U.S.C. 51 at Seek and all those Boiler Inspection Act cases all applied to California. The statute in United States v. California was a safety law. And the court said there's a safety problem. The Boiler Inspection Act is a safety law, right? Okay. And, similarly, in Jefferson County Pharmaceutical, there was an antitrust law at issue. And the state there was buying drugs and reselling them on the retail market in competition with ordinary businesses. And the court there said that there's no reason, again, to think that the evils that Congress wanted to prevent with the antitrust laws, that it wouldn't have wanted the state to comply with those requirements as well, because the harm can result just the same, regardless of whether it's a state doing it or a private business doing it. Did the statute at issue in United States v. California have similar language to the language that the tribes are relying upon, which apparently it interprets as exempting the state from the statute? Did it have similar language? In terms of giving the state regulatory authority? Regulatory power, right. I don't believe it did, Your Honor, but that language has no bearing on that separate question of whether the tribe or the sovereign has to comply with the law when it acts in a commercial capacity and engages in that regulated commercial conduct. The definition of state in the CFPA performs an entirely different function. As Judge Bea was noting earlier, that definition of state is used throughout the statute to identify entities that can play a regulatory role in helping to police the consumer financial marketplace. So in every provision in the Act referring to states, you see things like state regulator, state agency, state bank regulatory authority, state attorney general, things like that. Nowhere does the Act refer to state-owned commercial enterprises or state or tribally-owned lenders who are making loans over the Internet to consumers nationwide. Is there a different connotation between persons and state in the statute? In general, Your Honor, the word person is used to describe the people who are regulated by the Act. So, for example, the Bureau can issue CIDs to persons and petition to enforce CIDs against persons. It can also enforce the law against persons. By contrast, the word state is used throughout to describe the entities that play a regulatory role. Did the definition of person exclude sovereign entities? No, Your Honor, it does not. In the statute, it does not? It does not. And the fact that the statute designates a regulatory role for these kinds of state regulators in no way implies that when a state has a commercial arm that is engaging in the regulated commercial activity, making loans over the Internet all across the country, that that state or that tribe, when it engages in that regulated activity, doesn't have to play by the same rules as everyone else. So the Act defines person as an individual, partnership, company, corporation, association, trust, estate, cooperative, organization, or other entity. So you would agree that it does not include state literally within the definition of person, right? No, I would not, Your Honor. Why not? Two responses to that. First of all, the lenders here are companies. They are limited liability companies that have been separately incorporated, and so they fall under the plain meaning of the Act for that reason. If we disagree with your description of them as companies separate and apart from tribes, what would your response be? Second, the definition of person also includes other entity, and the word entity is certainly expansive enough to cover tribes themselves as well. Is it expansive enough to include state? Yes, Your Honor. And, in fact, the Blacks Law Dictionary definition of entity expressly identifies government entities as an example of an entity. Do you have any examples of your agency regulating any state entity that is involved in commercial practices? The Bureau has not yet done that, Your Honor. Okay. But both Coeur d'Alene and the Stevens line of cases show that when a sovereign, a tribe or a state is acting, engaging in commercial activity that is regulated, that there's no reason to think that Congress would have intended to allow that commercial actor to play by a whole different set of rules simply because it's affiliated with the sovereign. And if there are any remaining doubt on that score, there are various affirmative indications in the CFPA that should eliminate any remaining doubt. For example, Section 5517 of the Act, that's 12 U.S.C. 5517, contains various exclusions from the Bureau's authority. That section shows that when Congress intended to exclude entities from the Bureau's authority, it did so expressly. So it would be odd to think that it silently meant to exempt these entities without saying anything about it. Also, those exclusions are primarily about entities that are engaging in consumer financial activity as sort of an ancillary part of their business. None of those exclusions is addressing lending or companies whose primary business activity is lending across the country. And so that, too, makes it especially hard to believe that Congress would have wanted to exempt a significant part of the market from having to play by the same rules as everyone else. Another thing about these exceptions, they are very carefully crafted, and they are careful to preserve the Bureau's authority over preexisting consumer protection laws, for example. So even if an entity is otherwise excluded from the Bureau's authority, Congress made sure that when the Truth in Lending Act or the Fair Credit Reporting Act or something like that was at issue, the Bureau would still have authority to enforce those laws against those entities. And that, you know, further makes it hard to believe that Congress intended to give tribally affiliated lenders a blanket exemption from all laws and all enforcement. So for all of these reasons, tribes and tribally affiliated companies are covered by the CFPA, and that's true under this Court's Coeur d'Alene precedent. Briefly, I would respond to opposing counsel's suggestion that Coeur d'Alene does not apply here because the statute mentions tribes somewhere. Under Coeur d'Alene, that doesn't matter. The question is whether the statute expressly excludes tribes or expressly includes tribes. If it's silent on that coverage question, you apply Coeur d'Alene. And Coeur d'Alene is not in tension with Stevens. You end up with the same result regardless. So unless the Court has any further questions, I would ask that you affirm. It appears not. Thank you, counsel. Roboto. Thank you, Your Honor. I think the Bureau spent the last 20, 15 minutes running away from the text of what the statute is and the Stevens presumption. Now, Judge Rawlinson, you asked her, what's your best case for this idea that the CFPB is regulated? And she identified, she said that there have been statutes that have regulated antitrust and alcohol and the like. Those statutes are generally expressed about regulating the sovereign, regulating the state. And indeed today, as our brief points out at page 15, Congress, when they want to include the sovereign or want to include the tribe, does so. She then said, what's her case? California, the California case from Justice Stone. The California case doesn't even use the word persons in it. If that's the best they got, they got nothing at all. And indeed, when that California case was used by the folks in the Stevens case, the plaintiffs in the Stevens case, Justice Stevens used it in his dissent, along with the Jefferson County case, and the majority rejected it, saying, no, here the words are any persons. The words any person are presumed to exclude the sovereign. Justice Stevens disagreed with that, to be sure, but Stevens J. lost Stevens the case. And so they are relying on weak, old authority. The Congress had, when they wrote Dodd-Frank in 2010, the most recent case before it, which was the Supreme Court's case in Stevens, which said if you use the words any persons, this is what it means. It's going to exclude the sovereigns. Now, Judge Baya, look, I understand that there's a nice, intuitive appeal of the idea these are commercial actors and maybe they should be treated differently. That has never once been the test in the Ninth Circuit. Indeed, in the Skokomish case and in the Ninth Circuit, we've been following Coeur d'Alene, which says the statute applies generally unless it has to do with some attribute of the tribe, qua tribe. The last part, Your Honor, is not in, is not what we're resting on. There is a first exception to Coeur d'Alene which says that. Our argument is not about that. Our argument is twofold. Number one, the statute has to first be silent with its applicability to tribes before you get into Coeur d'Alene. And second, if you disagreed with us, then the statute, the legislative history, you'd have to look at and see what did Congress intend. And our point is never once has this Court ever confronted a statute like this in which Congress went out of its way to mention tribes and then said, oh, you know, and then somehow silently meant to regulate them at the same time. We're talking about tribes as regulators, not as regulatees. Right. Correct. So that's quite a difference. Absolutely. Because a tribe that is co-opting with the Federal Government in regulating some activity is what they mean by tribe in the Act.  So, again, if you read it that way, you'd be opening it up to all sorts of state regulation. But more importantly, Judge Beyo, that's exactly the argument Justice Holmes rejected in the Pringle case in 1925. He said, so long as when Congress mentions a sovereign once in a statute, and then if they use the word persons, there's an implication that that meant that they had the sovereign on its mind, but they didn't go so far as to extend regulation expressly to the sovereign. Therefore, the word persons should be read to exclude it. This is a very standard presumption in law. There's nothing unusual or fancy about it. All we're asking the Court to do is apply the time-honored standard about what any person means. That's, after all, the words Congress gave you. And if your intuitive, Judge Beyo, kind of ideas about commercial exception, you know, are persuasive, they can persuade the Congress. But as the Supreme Court has said in Bay Mills and Kiowa, it's not the Court's job to read a commercial exception into the law. It's rather the job of Congress to do so. They've said both of those expressly. Counsel, may I ask you then, what do you make of the language in Jefferson County at page 2015, continuing on to, I mean 10.15, continuing on to 10.16, which says that the statutory language persons and purchasers is sufficiently broad to cover governmental bodies. This concession was compelled by several of this Court's decisions. And then the Court cites the City of Lafayette v. Louisiana Power and Light Company, for example. We stated without qualification that the definition of person or person embraces both cities and states. What do we do with that language? Well, I think that this Court's confronted that en banc in Skokomish and as well in Will. And in both cases they've said the word persons follows the Stevens presumption even when it applies to tribes. And so I think there is some earlier language which they rely on, indeed Justice Stevens relied on. But I think that language has now been eclipsed by a modern, more robust view that when Congress uses the words any person, it is meant to exclude the sovereign. And by the way, in Skokomish you know that Nyserke cannot reverse Supreme Court precedents. You're not reversing it. It's exactly what the Court said in Skokomish. Indeed, there was a concurrence by Judge Berzon, which you joined, Judge Rawlinson, in that case, which said, you know, look, the tribes are acting here like commercial actors. So like Judge Baez, shouldn't they just be governed by a different meaning of the word person? And the Court majority, Judge Kaczynski's majority for the Court said no. The same thing in the Cook case. The same argument was made in Judge Fernandez. You were sitting on that case as well. There was an argument that, well, this is a casino so it should be governed not by the same standards because it's commercial. And the majority opinion said absolutely not. There's no commercial exception when we're talking about it. The words mean the same things. I'm not talking about whether the tribe is acting as a commercial entity or as a tribal entity. I'm talking about the specific definition of person that's articulated in this particular case. And I don't think that we can just easily say that we brush aside that language from the Supreme Court. Yeah, you don't have to brush it aside at all. In both Skokomish and in Arrold D., the Ninth Circuit has already said that the word person is meant to exclude tribes. It's expressed, you know, indeed it's an en banc decision. Your argument when you first were at the election said that the tribes are equivalent to states. So if the word person is broad enough to encompass states, then by your analogy it would be broad enough to encompass tribes under the language of this statute. Judge Rawlston, that would be right if that were the only language this Court was meant to deal with. But, of course, Stevens was very clear about it. After all, that was the Vermont Natural Resources Agency that was at issue in that case. And the Supreme Court said that when we, when the Congress uses the word any person, it is meant to exclude the sovereign. And that's the language that the Ninth Circuit has applied subsequently in Skokomish and in Arrold D. And so when I talked about the commercial stuff, I was maybe just going a little too quickly. I was thinking that you were trying to distinguish the case on the base, these cases on the basis it's commercial activity or not. And I was just simply saying that there is no such distinction in the Ninth Circuit case law. You'd really have to break some dramatically new ground to buy the Bureau's position here. All right. Could you sum up, counsel, please? Just simply that this is an unprecedented agency seeking unprecedented powers that Congress didn't authorize. And this Court's precedents are very clear, including Coeur d'Alene, that when Congress speaks with the words any persons, that means to exclude the sovereign. All right. Thank you, counsel. Thank you to both counsels for your helpful, both counsel for your helpful argument. The case just argued is submitted for decision by the Court. The final case on calendar, Exec. Jett Charter v. Werda, has been submitted on the briefs. That completes our calendar for today. And we are on recess until 9 a.m. tomorrow morning. All right.
judges: Fernandez, Rawlinson, Bea